28 Liberty Street, 30th Floor • New York, NY 10005

Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

October 27, 2021

**VIA CM/ECF**
Hon. Paul G. Gardephe, U.S.D.J.
United States District Court for the
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   *Velazquez v. Pizza on Stone LLC et al..*, No: 1:20-cv-9087(PGG)(GWG)

Dear Judge Gardephe,

We represent the Plaintiffs and Opt-In Plaintiffs in the above referenced matter. We write to respectfully request judicial approval of the Parties' settlement agreement attached hereto as **Exhibit ("Ex.") A**. The agreement resolves the claims of Plaintiffs Javier Velazquez and Ramiro Torres and Opt-In Plaintiffs Alfredo Dominguez, Angel Hermita, David Quirino, Gustavo Velazquez, Ismael Matias, Jesus Velazquez, Johanna Espinal, Oscar Moran, Rosalio Lorenzo, Rufino Lopez-Jimenez, Rufino Santos, and Sergio Nunez (collectively "Plaintiffs") for the total amount of $175,000.00. As part of this motion, Plaintiffs will request 1/3 in attorney's fees ($58,333.33) plus costs ($10,191.83) from the total settlement amount. For the reasons outlined below, the Court should approve the settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

## BACKGROUND & PROCEDURAL HISTORY

Fitapelli & Schaffer, LLP ("F&S") was retained by Javier Velazquez and Ramiro Torres who worked as tipped workers at Adrienne's Pizzabar located at 54 Stone Street, New York, New York 10004. On February 21, 2020, F&S sent a pre-suit demand letter on behalf of Plaintiffs to Defendants advising them of claims of various wage and hour violations and inviting a pre-litigation response. After the parties were unable to reach a settlement through prelitigation discussions, Plaintiffs filed this action on October 29, 2020. *See* ECF No. 1. Plaintiffs subsequently filed an Amended Complaint on February 3, 2021. *See* ECF No. 25.

Plaintiffs alleged that Defendants violated the minimum wage and overtime requirements of the FLSA and NYLL because they paid Plaintiffs less than the full statutory minimum hourly wage by unlawfully taking advantage of a "tip credit." Specifically, Plaintiffs alleged lack of adequate written notice of the tip credit and excessive side work. Front of house workers also alleged an unlawful tip pooling arrangement that included a member of management. Delivery

workers also alleged failure to receive reimbursements for "tools of the trade," such as bicycles, helmets, brakes, and other equipment purchased for their job. Finally, all Plaintiffs alleged claims for statutory penalties under the WTPA for improper wage notices and wage statements.

Defendants filed an original and amended answer denying all liability. *See* ECF Nos. 22, 28. The Parties stipulated to FLSA notice, which was sent on June 3, 2021 via U.S. Mail and text message. After the close of notice on August 2, 2021, a total of 12 opt-in Plaintiffs had joined this case.

Following the close of the opt-in period, the Parties agreed to attend a private mediation. Prior to mediation, the Parties engaged in both formal and informal discovery. Specifically, F&S provided written discovery responses for several Plaintiffs in the spring prior to the issuance of notice. Defendants likewise provided over 1,500 pages of documents, including payroll registers and employee jackets for all Plaintiffs.

The Parties attended mediation before Stephen Sonnenberg, Esq. of JAMS on August 30, 2021. After a full day mediation, the Parties reached a settlement for $175,000. Over the following weeks, the Parties negotiated and executed the Settlement Agreement, attached hereto as **Ex. A**.

The Settlement allocates the net settlement fund to Plaintiffs using a points formula based upon hours worked and position held. *See* **Ex. A**, Settlement Agreement ¶ 3. The points formula is allocated based on strength of claims, as front of the house and delivery workers had slightly differing methods to obtain differential damages with varying strength of claims. *Id*. ¶ 3(a)(i). The Settlement Agreement also provides for a modest $2,000 service award for each Named Plaintiff, along with $500 for Plaintiffs who attended mediation. *Id.* ¶ 3(b).

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining

between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $106,474.84 to the Plaintiffs was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

### Factor 1: The Range of Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiffs' range of possible recovery was between $0 and $583,340.25 – representing differential damages ($139,485.86), tip misappropriation damages ($85,145.80),[1] tools of the trade damages ($7,663.46), liquidated damages ($232,295.12), WTPA notice penalties ($65,000.00), and WTPA wage statement penalties ($53,750.00). The $175,000 settlement amount represents approximately 65% of differential damages, 10% of misappropriated tips, 50% of tools of trade, 0% liquidated damages, 50% WTPA notice penalties, and 75% WTPA wage statement penalties. Based on the litigation risks discussed below, the total settlement of $175,000.00 is a fair and reasonable result.

### Factors 2 & 3: Avoiding Burdens & Litigation Risk

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct full discovery, including depositions of all parties, including corporate representatives for Defendants and likely many, if not all, of the opt-in Plaintiffs. This would require further transactional costs for both sides. In addition, Plaintiffs would file their Rule 23 Class Certification Motion, which Defendants would oppose, all of which would lead to further legal briefings. As such, further litigation would require significant time and expense.

In addition, both sides face serious litigation risks relating to damages and liability. Unlike in many wage and hour restaurant cases, Defendants paid its tipped workers at the correct "tipped" minimum wage, paid its workforce for all hours worked, and provided wage notices and wage statements that they argued fulfilled their legal obligations. As a result, while Plaintiffs believe they could establish liability based on alleged deficiencies in Defendants' paperwork, there is a large risk that the Court could view the paperwork as compliant under the NYLL. In addition, another key issue in this case – whether an individual who received tips had sufficient managerial authority to bar her from being tip eligible – is a wholly factual question, requiring significant discovery. If the Court held that this position was tip-eligible and Defendants' paperwork was sufficient, then Plaintiffs only had their side work claims to obtain differential damages, another largely factual claim that could have differing results based on shifts, days of the week, and positions held. As a result, this factor supports approval of this settlement.

In addition to risk on the merits, the Parties also faced additional complications in both prosecuting and defending this action due to the ongoing COVID-19 pandemic. COVID-19 has without question significantly affected the restaurant industry, Defendants' restaurants included, due to past shutdowns, reductions of services, and now, continued regulations on the restaurant industry. Given the uncertainty that lies ahead, it would be imprudent to not consider the additional

---

[1] This figure represents the misappropriated tips that could be allocated to the entire putative Rule 23 Class.

complications caused by COVID-19 in both the near- and long-term. As a result, the Settlement Agreement takes into account this additional risk created by the COVID-19 Pandemic.

### Factors 4 & 5: Arm's Length Negotiation & Experience

The fourth and fifth factors also weigh in favor of approval. Plaintiff's counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and both Parties' counsel have significant experience handling wage and hour claims. *See* **Ex. B**, F&S Qualifications. Defendants' Counsel is also experienced in handling wage and hour matters.

In addition, there is no evidence of fraud or collusion, as the Settlement amount represents a significant percentage of Plaintiffs' potential recovery and was obtained after an all-day mediation before an experienced wage and hour mediator. Moreover, all Plaintiffs have signed the Settlement Agreement, which specifies their individual allocations after attorneys' fees and costs and the allocation formula used to determine the allocations. *See* **Ex. A**.

### The Court Should Approve of the Point Formula and Service Awards

The settlement allocation formula is fair and reasonable and should be approved. Specifically, the point allocation formula assigns points based on the number of claims for each position, and the strength of each type of claim. For instance, servers are receiving less points than bussers because of weaker side work claims. In addition, while delivery workers do not have a tip misappropriation claim, they do have a strong side work claim, along with a strong FLSA tools of the trade claim. As a result, the points system is based upon the facts of this case and is a fair allocation of the net settlement.

The Court should also approve the total sum of $5,500.00 in service awards to the Named Plaintiffs and certain Opt-In Plaintiffs who attended mediation, as these awards recognize the service they provided to the overall group of Plaintiffs in this case. Such service awards are routinely approved by Courts in this District. *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (Gardephe, J.) (awarding service awards to each named Plaintiff); *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19 Civ. 4027, 2021 WL 1310220, at *3 (E.D.N.Y. Apr. 8, 2021) (awarding $2,500 to named plaintiff in multi-plaintiff collective settlement); *Barsa v. Beacon Health Options, Inc.*, No. 19 Civ. 1646, 2020 WL 7240345, at *1 (S.D.N.Y. Sept. 28. 2020) (awarding service award to named plaintiff in multi-plaintiff collective settlement).

### No Red-Flag Issues Are Present In This Settlement

The red-flag issues identified in *Cheeks* are not present here. First, the agreement does not have a confidentiality or non-disparagement clause.

The Parties submit that the release here – a mutual general release – is fair and reasonable, especially where, as here, none of the Plaintiffs work for Defendants anymore. *See Strauss v. Little Fish Corporation*, No. 19 Civ. 10158 (LJL), 2020 WL 4041511, at *4-6 (S.D.N.Y. July 17, 2020) (finding that a mutual general release "permits the two parties, who have parties, who have evident hostility towards one another, to walk away from the relationship" where there no further employment relationship); *see also Lola v. Skadden, Arps, Meagher, Slate, & Flom LLP*, No. 13 Civ 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (finding that a mutual release "assuage[es] concerns that the waiver unfairly benefits only Defendants"): *Souza v. 65 St. Marks Bistro,* No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes"). Moreover, Defendants have agreed to provide a neutral reference (**Ex. A ¶** 8), further indicating the fairness of this overall settlement.

Finally, as will be discussed below, F&S' requested attorneys' fees are not excessive. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

### THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel and the Consent to Join forms signed by Plaintiffs, the Agreement provides that Plaintiffs' Counsel will recover $68,525.16, equaling one-third of the settlement ($58,333.33) plus costs ($10,191.83). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with this representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. Courts in this district routinely award approve attorneys' fees of one-third in FLSA cases. *See, e.g.*, *Bannerman v. Air-Sea Packing Grp. Inc.,* No. 18 Civ. 06146, 2020 WL 408350, at *1 (S.D.N.Y. Jan. 24, 2020) (Gardephe, J.) (approving one third of total settlement as attorneys' fees); *Campos v. Sixtyone Reade Pizza Inc.,* No. 19 Civ. 2414, 2021 WL 3501193, at *1 (S.D.N.Y. Aug. 9, 2021) ("Courts in this District routinely award attorneys' fees based on contingency agreements up to one third of the settlement.").

Through the date of this filing, Plaintiffs' counsel has spent approximately 122 attorney hours litigating and settling this action. These hours were compiled from contemporaneous time records maintained by each attorney participating in the case and are reasonable for a case that

has required ample review of financial records.² Since November 2014, all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than two percent (2%) of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are inherently high-disk due to often unexpected closings and collection issues. Further illustrating the risks, three New York businesses that Plaintiffs' Counsel sued for wage issues have closed– Artisanal Bistro, Koi-Soho, and Petrossian. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's one-third fee award is more than reasonable, as they currently have a lodestar multiplier of approximately 1.20, based on fees of $48,448.75. *See Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts . . . .").

Lastly, Plaintiffs' counsel expended $10,191.83 in litigation costs and expenses. *See* **Ex. B.** These costs are primarily comprised of the expenses of having a private mediation with Stephen Sonnenberg ($3,925.00), process service costs ($784.72), and administering the FLSA collective notice with AB Data, an independent administration company ($4,674.00). These costs are commonly reimbursed by courts in this District. *See, e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15 Civ. 5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) (holding that court filing fees, process servers, transcripts, travel, and other litigation costs are generally recoverable if they are necessary for the representation of the client), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017). As such, Plaintiff's Counsels' attorneys' fees are fair and reasonable and should be approved by the court.

\*   \*   \*

---

² Contemporaneous time records can be made available to the Court upon request.

Fitapelli & Schaffer, LLP
October 27, 2021
Page 7 of 7

      For the above reasons Plaintiff respectfully requests that the Court approve the attached Settlement Agreement and so-order the enclosed Stipulation of Dismissal (attached as **Exhibit C**).

      We thank the Court for its time and consideration.

                                                        Respectfully submitted,

                                                        Armando A. Ortiz

CC:    Defendants' Counsel (via ECF)